# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**People v. Dereadt, 2013 IL App (2d) 120323**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT P. DEREADT, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-12-0323 |
| Filed | September 30, 2013 |
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The appellate court upheld defendant's conviction for disorderly conduct based on his alleged encounter with two young girls, notwithstanding his contentions that plain error occurred when the trial court proceeded with a 6-person jury without obtaining defendant's waiver of a 12-person jury and that the girls' identification testimony was vague and uncertain, since defense counsel's statement that he had spoken to defendant about whether he wanted a jury of 6 or 12 implied that defendant participated in the decision to have a jury of 6 and did not merely acquiesce in his counsel's decision, most of the inconsistencies in the girls' testimony were unrelated to their identification of defendant, and, under the circumstances, there was no basis to disturb the jury's assessment of their credibility. |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 10-CM-2367; the Hon. Karen M. Wilson, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Thomas A. Lilien and Paul J. Glaser, both of State Appellate Defender's Office, of Elgin, for appellant. |
|---|---|
| | Robert B. Berlin, State's Attorney, of Wheaton (Lisa Anne Hoffman and Edward R. Psenicka, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE JORGENSEN delivered the judgment of the court, with opinion. |
| | Presiding Justice Burke and Justice Hutchinson concurred in the judgment and opinion. |

**OPINION**

¶ 1    Defendant, Robert P. Dereadt, was convicted by a six-person jury of disorderly conduct (720 ILCS 5/26-1(a)(1) (West 2010)). He appeals, contending that (1) the trial court committed plain error by proceeding with a 6-person jury without securing defendant's personal waiver of a 12-person jury; and (2) he was not proved guilty beyond a reasonable doubt where the eyewitnesses' identification of defendant and his truck was vague and uncertain. We affirm.

¶ 2    On the date set for trial, defendant's attorney told the court:

"Your Honor, we had the opportunity to speak with Mr. Dereadt about the scheduling and about whether he would want a jury of six and twelve, and at this time, he's asking for a jury of six."

¶ 3    The trial court did not discuss the matter directly with defendant, who was present. The following day, the case proceeded with the selection of a six-person jury.

¶ 4    Alycia C. testified that, on April 24, 2010, she and Keileen D., both aged 13, became bored, so they made a sign saying "Honk for God" and waved it at passing cars. Ten to fifteen minutes later, a black pickup truck drove by them twice, then pulled up to the curb and stopped within seven to eight feet of the girls. Alycia noticed that the truck's black paint was dull, looking as if it had been spray-painted on the truck.

¶ 5    The man inside the truck asked if the girls had seen his dog. He said that if they licked "this" he would give them $50. Alycia thought that the man was referring to his "privates." He had something pink and blue in his "upper lap area." The man asked them several more times. They said "no" each time and, after the fourth time, told him to go away. The man drove away and the girls ran into Keileen's house and told her mother, who called the police.

¶ 6    While waiting for detectives to arrive, Keileen drew a picture of the man and his truck.

Alycia described the man as white and bald, wearing a navy blue baseball cap with yellow lettering, with hair under his lip and above his chin. She could "kind of see" under his cap. At the police station, the girls put together composite drawings of the man and viewed a six-photo lineup. Alycia chose defendant's photo as looking "closest" to the man. However, she could not identify the man in the courtroom. She thought that the truck was a Ford, with a single seat, but she did not see any license plates on it.

¶ 7 Keileen's testimony about the incident was largely consistent with Alycia's. She described the truck's black paint as "rough" and said that the truck had no license plates. The driver was white, wore a baseball cap, a black shirt, and jeans, and had "kind of like a mustache but shaved off." He wore sunglasses at first, but took them off as he was driving away. Thus, Keileen got only a "quick glimpse" of his eyes, but she thought that they were brown. In court, Keileen identified defendant as the driver. Keileen could not positively identify the driver from the photo lineup, but she picked two photos as looking similar to the driver.

¶ 8 Deputy Joshua Schindlbeck, of the Du Page County sheriff's office, heard a dispatch about a suspicious flat black truck. Within an hour, he saw a truck matching the description. He and another deputy followed the truck and eventually pulled it over. Schindlbeck believed that the truck, a Dodge crew cab (with a second seat), had license plates, and later that day he wrote in his report that it did. Defendant, who was driving, appeared very nervous. He wore a black baseball cap, a black t-shirt, and blue jeans. Schindlbeck asked defendant if he had been in the area looking for a dog, and he said that he had not. After running defendant's name through the Law Enforcement Agencies Data System (LEADS), the deputies allowed him to leave. Schindlbeck's report did not make any reference to defendant having facial hair.

¶ 9 Deputy Randall Simpson was dispatched to speak with the girls at the scene. The girls' mothers agreed to bring them to the police station. After another deputy called about having stopped a vehicle that looked similar to the one the girls described, Simpson used the description of the driver to prepare a photo lineup. Alycia immediately chose defendant's photo. Keileen selected photos of defendant and another man.

¶ 10 Later that night, Simpson went to defendant's home in Winfield, a couple of miles from the scene of the incident. He saw a flat black pickup in the driveway. It had license plates. Defendant said that he had driven in the area around 4 p.m. to go to his grandparents' home and put some tools away. He denied having contact with any girls that day.

¶ 11 Simpson later saw the same truck (based on defendant's license plates) at a shopping mall. This time the truck had red stripes on the front hood and on the rear. He prepared a photo lineup of pickup trucks for the girls. He had received reports that Keileen had seen the same truck several times since the incident (but never mentioned red stripes). The girls did not identify any of the trucks until Simpson pointed out the one with the red stripes. They then agreed that, but for the stripes, that one could have been the one that they saw.

¶ 12 The jury found defendant guilty of two counts of disorderly conduct. The trial court merged the counts and sentenced defendant to 30 days in jail. Defendant timely appeals.

¶ 13 Defendant first contends that the trial court erred by proceeding with a 6-person jury

without securing his personal waiver of a 12-person jury. He concedes that he did not include this issue in his posttrial motion, but asks that we consider it as plain error. As the knowing waiver of the right to a jury trial is "fundamental," it implicates the second prong of plain-error review, where "remedying the error is necessary to preserve the integrity of the judicial process." *In re R.A.B.*, 197 Ill. 2d 358, 363 (2001). Thus, we consider whether plain error occurred.

¶ 14 As defendant correctly notes, the right to a jury trial in a criminal case is guaranteed by both the federal and the state constitutions. U.S. Const., amend. VI; Ill. Const. 1970, art. I, §§ 8, 13. The constitutional right to a jury trial is codified in section 115-1 of the Code of Criminal Procedure of 1963 (the Code) (725 ILCS 5/115-1 (West 2010)), which provides that "[a]ll prosecutions except on a plea of guilty or guilty but mentally ill shall be tried by the court and a jury unless the defendant waives a jury trial in writing." The general understanding, possibly dating back as far as the tenth century (725 ILCS Ann. 5/115-4, Committee Comments–1963, at 23 (Smith-Hurd 2008)), is that a jury consists of 12 members. Thus, the Code provides that, where a defendant elects a trial by jury, "[t]he jury shall consist of 12 members." 725 ILCS 5/115-4(b) (West 2010).

¶ 15 Nevertheless, a 12-person jury is not absolutely required, for a defendant's right to waive his right to a jury trial entirely necessarily includes the right to waive a jury composed of 12 members. *People ex rel. Birkett v. Dockery*, 235 Ill. 2d 73, 78 (2009). In *People v. Scudieri*, 363 Ill. 84, 87 (1936), the supreme court found no error in proceeding to trial with a jury of 11 after the defendant had agreed to the lesser number because a full panel was unavailable. See also *People v. Pierce*, 369 Ill. 172 (1938) (same). Indeed, Illinois courts have consistently held that a criminal defendant may waive the participation of the full number of jurors and proceed with fewer than 12. See, *e.g.*, *People v. LaFond*, 343 Ill. App. 3d 981, 985 (2003) (after the jury has retired to deliberate and one juror becomes unable to serve, defendant may agree to proceed to verdict with fewer than 12); *People v. Matthews*, 304 Ill. App. 3d 415, 419-20 (1999) (defendant may waive the right to a jury of 12 and proceed with a lesser number, as long as the waiver is affirmatively shown on the record); *People v. Ernst*, 219 Ill. App. 3d 51, 54 (1991) (collecting cases holding that a defendant may waive his right to a jury of 12 and proceed with a lesser number).

¶ 16 Somewhat less clear is what is necessary for a valid waiver of the right to a 12-person jury. In cases involving complete jury waivers, an oral waiver by defense counsel in the defendant's presence, in open court and without objection by the defendant, is generally valid. See *People v. Murrell*, 60 Ill. 2d 287, 290 (1975); *People v. Sailor*, 43 Ill. 2d 256, 260 (1969). However, defendant cites *Matthews* for the proposition that the trial court could not proceed with a 6-person jury without securing defendant's personal waiver of a 12-person jury.

¶ 17 We disagree with defendant's reading of *Matthews*. The court there reversed the defendant's conviction and remanded for a new trial because "nothing in the record indicates that defendant was aware of his right to a 12-person jury. Nothing in the record indicates that defendant agreed to a jury of fewer than 12 members, as occurred in [*People v. Quinn*, 46 Ill. App. 3d 579 (1977)], or acquiesced in a jury of six." *Matthews*, 304 Ill. App. 3d at 419. Thus, the court's primary concern was that the defendant was not aware of his right to a 12-person

-4-

jury and could not, under the circumstances, be deemed to have acquiesced in a trial by a lesser number.

¶ 18    In *Quinn*, which *Matthews* distinguished, defense counsel and the prosecutor, during a conference in the judge's chambers, agreed to a six-person jury. The defendant remained in the courtroom during this conference. However, defense counsel had informed the defendant that he had a right to a 12-person jury but that he could waive that right and agree to be tried by a 6-person jury. *Quinn*, 46 Ill. App. 3d at 581. The reviewing court refused to find plain error, noting that the defendant's rights were explained to him, he did not object at that time, and he had never claimed that he did not understand the right to a 12-person jury. *Id.* at 583.

¶ 19    More recently, in *People v. Barrier*, 359 Ill. App. 3d 639 (2005), the Third District rejected the defendant's argument that *Matthews* required the defendant's personal waiver of a 12-person jury. There, defense counsel stipulated, in the defendant's presence, to select 12 jurors with no alternates. When a juror became ill, the trial proceeded with 11 jurors. The court held that defense counsel's stipulation in the defendant's presence to proceed with no alternate jurors strongly implied the defendant's awareness of the right to a 12-person jury and her acquiescence in proceeding with less than that number if a juror became ill. *Id.* at 643-44.

¶ 20    Here, defense counsel stated that she had spoken with defendant "about whether he would want a jury of six and twelve."[1] This was sufficient under *Quinn* and *Barrier*. In fact, this case is stronger than those cases because counsel's statement implies that defendant actively participated in the decision rather than merely acquiescing in counsel's decision.

¶ 21    Defendant next contends that he was not proved guilty beyond a reasonable doubt, because the girls' identification of him and his truck was vague and uncertain. We disagree.

¶ 22    Where a defendant challenges on appeal the sufficiency of the evidence, we ask whether, after viewing all the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *People v. Beauchamp*, 241 Ill. 2d 1, 8 (2011). We may not substitute our judgment for that of the trier of fact on questions involving the weight of the evidence, the credibility of the witnesses, or the resolution of conflicting testimony. *People v. Campbell*, 146 Ill. 2d 363, 375 (1992). A positive identification by a single witness who had a sufficient opportunity to observe the defendant is enough to support a conviction. *People v. Johnson*, 114 Ill. 2d 170, 189 (1986). However, a doubtful, vague, or uncertain identification will not support a conviction. *People v. Slim*, 127 Ill. 2d 302, 307 (1989).

¶ 23    Nevertheless, courts have consistently recognized that vague or discrepant descriptions do not necessarily render identifications unreliable, because very few witnesses are trained to be keen observers. See, *e.g.*, *People v. Williams*, 118 Ill. 2d 407, 413-14 (1987) (witness's failure to mention the defendant's facial hair did not render her identification unreliable); *People v. Nims*, 156 Ill. App. 3d 115, 120-21 (1986) (victim's failure to mention the defendant's facial scars did not render her identification unreliable); see also *People v. Bias*,

---

[1]Defense counsel probably meant to say "six *or* twelve," but defendant does not argue that counsel's statement to the court confused him.

131 Ill. App. 3d 98, 104-05 (1985) (inaccuracies pertaining to the "presence or absence of a beard, mustache, or tattoo, whether the assailant had missing teeth, and the assailant's height, weight and complexion, do not render an identification utterly inadmissible"). Indeed, " '[t]he credibility of an identification does not rest upon the type of facial description or other physical features which the complaining witness is able to relate. [Citation.] It depends rather upon whether the witness had a full and adequate opportunity to observe the defendant.' " *People v. Robinson*, 206 Ill. App. 3d 1046, 1051 (1990) (quoting *People v. Witherspoon*, 33 Ill. App. 3d 12, 19 (1975)).

¶ 24    Illinois courts consider five factors, commonly known as the *Biggers* factors, when determining whether a witness's identification is reliable. *People v. Piatkowski*, 225 Ill. 2d 551, 567 (2007) (citing *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972)). The *Biggers* factors include: (1) the witness's opportunity to view the offender at the time of the offense; (2) the witness's degree of attention at the time of the offense; (3) the accuracy of the witness's earlier description of the offender; (4) the level of certainty shown by the witness when confronting the alleged offender; and (5) the length of time between the offense and the identification confrontation. *Biggers*, 409 U.S. at 199; *Slim*, 127 Ill. 2d at 307-08. In addition to these specific factors, courts also consider the totality of the circumstances when reviewing the reliability of an identification. *Biggers*, 409 U.S. at 199-200; *People v. Smith*, 299 Ill. App. 3d 1056, 1062 (1998).

¶ 25    Here, both girls positively identified defendant as the driver of the truck. It is true that Alycia identified defendant in the photo lineup but not in court, while Keileen identified defendant in court but could not pick him out of the photo lineup. However, Keileen selected defendant's photo as one of two that looked similar to the driver. Moreover, Alycia's inability to identify defendant in court does not necessarily destroy the validity of her earlier identification of him from the photo lineup. Earlier identifications are admissible despite a witness's inability to make an in-court identification. *People v. Gonzalez*, 292 Ill. App. 3d 280, 287 (1997) ("A reliable identification occurring only minutes after the crime should not be kept from the jury solely because the witness is unable, several months later and under the pressure of testifying in court, to identify the defendant."). The girls appeared to have had a sufficient opportunity to view defendant, as they were within eight feet of the truck and the encounter went on for some time. They were clearly attentive, as they engaged with him in a brief conversation, and the photo lineup occurred within hours of the offense.

¶ 26    Further, it is undisputed that, with one exception, defendant matched the general descriptions the girls gave. Moreover, he drove a black pickup, as they described, and was stopped by a police officer near the scene less than an hour after the offense. Contacted later at his home, which was less than two miles from the scene, he admitted having been in the area on the day in question, although he denied talking to the girls.

¶ 27    Defendant points to various inconsistencies in the girls' descriptions of the offender. He contends, for example, that the girls described the offender as bald while defendant has hair. Keileen testified that the offender had brown eyes, but she claimed that he wore sunglasses during most of the incident and that she got only a "quick glimpse" of his eyes when he removed the glasses while driving away. He complains that the girls inconsistently described his facial hair and notes that, while both girls testified that defendant had some facial hair,

Schindlbeck made no mention in his report of any facial hair.

¶ 28 As noted, identifications are usually based on overall impressions rather than on specific features. *Robinson*, 206 Ill. App. 3d at 1051. Defendant does not contend that the girls had an inadequate opportunity to observe the offender or that any of the procedures used to identify the offender were unduly suggestive. Rather, he complains only about the girls' descriptions of "physical features." As noted, both girls testified consistently that the offender wore a hat. Thus, their failure to notice defendant's hair is not unremarkable, especially given defendant's admittedly "high forehead." Defendant characterizes their testimony that he was bald as "rank speculation," but it would have been equally speculative to testify that he had hair. The jury was aware that the offender was wearing a hat and that any testimony about his hair or lack thereof was necessarily speculative. Similarly, the girls testified consistently that the offender wore sunglasses during the incident, and thus the jury was aware that any testimony about the color of his eyes was suspect. However, these facts did not require the jury to reject their ultimate identification of defendant as the offender. That Schindlbeck did not note defendant's facial hair also does not undermine the identification of defendant as the offender. The officer did not testify that the man he stopped did not have facial hair; his report merely failed to note any.

¶ 29 Defendant also contends, however, that the girls' description of the truck was fatally flawed. He notes that they described the truck as having no license plates and no backseat, and that Alycia thought it was a Ford, whereas the truck was a Dodge crew cab and had license plates when stopped an hour after the incident. These are the types of omissions that, like the failure to notice scars and facial hair, do not automatically invalidate a later identification. Even discounting the possibility that defendant, bent on mischief, temporarily removed or covered the license plates, the girls apparently saw the truck primarily from the side, so their failure to notice license plates could be forgiven. Moreover, the girls' attention was focused on defendant, who was speaking to them, so their failure to correctly identify the make of the truck or to notice specific details about it is unremarkable.

¶ 30 Defendant argues that the girls picked his truck out of a photo lineup only after Simpson suggested that they look at the photo of the truck with red stripes. Both girls then concluded that, without the stripes, the truck could have been the one that they saw. The significance of this is not readily apparent. Defendant, not his truck, was charged with the offense, and both girls identified him as the offender. While a lineup must not be unduly suggestive in identifying an offender, it is not clear how the suggestive truck lineup affected the girls' identification of defendant.

¶ 31 Finally, defendant points out that Keileen's drawing of the truck does not include running boards. The drawing does contain a fine double line under the door that could represent a running board, but, in any event, we will not reverse defendant's conviction because a 13-year-old's crude line-drawing of his truck fails to include a running board.

¶ 32 Defendant lists other examples of what he considers flaws in the girls' testimony. Most of these have nothing to do with the issue of his identification. Defendant apparently lists *seriatim* every point on which one or both of the girls was or could have been impeached and invites us to assess their credibility differently than the jury did. We must decline the

invitation, as the jury is the ultimate arbiter of witness credibility. See *Campbell*, 146 Ill. 2d at 375.

¶ 33     The judgment of the circuit court of Du Page County is affirmed.

¶ 34     Affirmed.